**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0814-22

MICHELLE DAPONTE PINHO,

    Plaintiff-Respondent,

v.

RUI A. PINHO,

    Defendant-Appellant.

_____

> Argued October 25, 2023 – Decided November 21, 2023
>
> Before Judges Vernoia and Walcott-Henderson.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hunterdon County, Docket No. FM-10-0116-18.
>
> Rui A. Pinho, appellant, argued the cause pro se.
>
> Michelle DaPonte Pinho, respondent, argued the cause pro se.

PER CURIAM

    Plaintiff Michelle DaPonte Pinho and defendant Rui A. Pinho are the parents of triplet daughters born in 2007. In this post-judgment matrimonial

matter, defendant appeals from an October 21, 2022 order denying his motion to compel plaintiff to pay fifty percent of the cost of orthodontic care for the children.[1] Having considered the record, the parties' arguments, and the applicable legal principles, we vacate that portion of the order denying defendant's motion to compel plaintiff to pay fifty percent of the orthodontic costs and remand for further proceedings.

The pertinent facts are not in dispute. The parties married in 2000 and divorced in 2018. Their dual judgment of divorce incorporated a marital settlement agreement (MSA) which, through incorporation of a judgment fixing custody and parenting time, granted the parties joint legal custody of the children and designated plaintiff the parent of primary residence and defendant the parent of alternate residence.

Pertinent here, paragraph twenty-nine of the MSA provides that the parties "shall share the children's dental and vision expenses 50/50." Paragraph five of the MSA separately provides that "[t]he parties shall agree on the medical,

---

[1] The challenged order addressed issues other than defendant's motion to compel plaintiff to pay fifty percent of the orthodontic costs. We address the order only to the extent it denied that request because defendant does not challenge any other determination reflected in the order. See generally Drinker Biddle & Reath LLP v. N.J. Dep't of L. & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (explaining issues not briefed on appeal are deemed abandoned).

dental, and/or psychological providers for the children (with the exception of an emergency)," and paragraph three of the MSA states the parties "shall consult and agree with each other with respect to all major decisions concerning the children's . . . medical care, health, welfare and other matters of similar importance."

Paragraph nine of the agreement states that defendant is "responsible for the $5,000 deductible for medical and prescription expenses," and the "[p]arties shall use in-network providers except in case of an emergency." It further provides that "[a]fter the deductible is met, unreimbursed medical expenses shall be split evenly (50/50)."

In 2022, the parties filed cross-motions seeking enforcement of various provisions of the MSA and prior court orders. In that exchange of motions, defendant sought an order compelling plaintiff to contribute fifty percent of the costs of orthodontic care for the children. The motion was founded on defendant's claims the children required braces and related orthodontic care, plaintiff had rejected or ignored defendant's communications explaining the care was necessary, and defendant was required to obtain the care without plaintiff's consent. Defendant asserted plaintiff was therefore obligated to pay her share—

A-0814-22

fifty percent—of the costs in accordance with paragraph twenty-nine of the MSA.[2]

Plaintiff opposed defendant's motion, arguing she had conferred with a dentist and orthodontist who opined the children did not need braces other than for cosmetic purposes. She also argued defendant could not unilaterally obtain the non-emergent orthodontic care under the MSA without her prior consent and then require her to contribute to the costs of the care.

Plaintiff further claimed defendant had successfully defeated a motion she filed earlier in 2022 to compel his contribution for medical care she obtained for the children based on his claim plaintiff had not first sought his consent for the care as required by the MSA. Plaintiff argued the same principle should apply to defendant's motion to compel her to contribute to the orthodontic costs and, for that reason, defendant's motion should be denied.

The court heard argument on the motions. The parties appeared as self-represented litigants and testified. Defendant testified he sent emails to plaintiff over the course of more than a year explaining, and providing information from an orthodontist detailing, the children's need for orthodontic care and braces.

---

[2] As noted, paragraph twenty-nine of the MSA provides that "[t]he parties agree that they shall share the children's dental and vision expenses 50/50."

A-0814-22

According to defendant, in each instance, plaintiff took the position the care was unnecessary other than for cosmetic reasons. Defendant explained that he decided to proceed with the orthodontic care because the children were at an age where the braces had become a necessity and further delay would exacerbate the conditions that required braces in the first instance. In response to the court's questioning, defendant acknowledged he had not obtained plaintiff's consent to use the orthodontist he selected as required under the MSA. Defendant testified he did so because plaintiff had not provided proper reasons for her refusal to provide her consent.

Plaintiff testified she conferred with a dentist and orthodontist who opined the children did not require braces. She also explained that based on those opinions, the braces and orthodontic care defendant had decided were necessary, and for which he sought her contribution, were not covered under the dental insurance plan she had obtained for the children. Plaintiff testified defendant failed to comply with the MSA because he unilaterally incurred the orthodontic expenses without her consent in the absence of any emergency and he used the services of an orthodontist who was not in the insurance carrier's network of providers.

A-0814-22

During the hearing on the motion, the court found there was a genuine dispute between the parties concerning their respective obligations under the MSA and the need for the orthodontic care. In a written statement of reasons issued following the hearing, the court denied defendant's motion.

In its statement of reasons, the court noted that under the plain language of paragraph twenty-nine of the MSA, plaintiff is required to reimburse defendant for fifty percent of the costs of orthodontic care. The court further reasoned that paragraph twenty-nine must be read in conjunction with paragraphs three and five of the MSA, but the court did not explain the manner in which those paragraphs tempered what it otherwise found was paragraph twenty-nine's plain language.

The court also found defendant's argument—his failure to obtain plaintiff's prior consent to select the orthodontist and authorize the orthodontic care did not require the denial of his motion—to be "borderline disingenuous." The court based that finding on its determination defendant "previously sought the protection of the [MSA] to prohibit the type of unilateral medical decision he admittedly made" in obtaining the orthodontic care and, as a result, he was barred from taking an inconsistent position on his claim for reimbursement from plaintiff.

6

The court noted that "[u]nder different circumstances" it "might consider appointing an independent orthodontist to examine the children in accordance with Rule 5:3-3(a)," but the court explained it would not do so because a "'best interests' analysis" was unnecessary since the children already had the braces. The court took "judicial notice of the general benefits of orthodontic care at a younger age[,]" and that, given the age of the children, "now is likely the best time to complete" the care.

The court determined defendant was not entitled to reimbursement from plaintiff because he "fail[ed] to follow a process that he negotiated" in the MSA and had "sought to have enforced in earlier motion practice." Thus, the court concluded that because "[p]laintiff wishes to adhere to her seemingly intemperate position that such care is not necessary, . . . [d]efendant [was] without the authority to unilaterally make the decision to proceed" with the orthodontic care.

The court entered an order denying defendant's motion. This appeal followed.

Defendant argues the court's order should be reversed because paragraph three of the MSA plainly requires that the parties equally share the costs of dental care for the children. Defendant contends the evidence submitted to the

7

motion court established he communicated with plaintiff for over a year to gain her consent to the orthodontic care that two orthodontists advised him was required, and plaintiff was either unresponsive to his communications or without a proper basis to reject the orthodontists' opinions. He further asserts he did not decide to proceed with the care until it became necessary to do so by the worsening of the conditions that required orthodontic care in the first instance.

In response, plaintiff argues we should affirm the court's order because the record shows she responded to defendant's communications concerning the orthodontic care, advising defendant that a dentist and orthodontist she had consulted opined that the children did not require braces other than for cosmetic reasons. Plaintiff further argues defendant violated the MSA by failing to first obtain her consent to the care and by selecting a dental provider outside the network of the dental insurance carrier with which she had obtained dental coverage for the children.

Our scope of review of Family Part orders is narrow. Cesare v. Cesare, 154 N.J. 394, 412 (1998). We "accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters," Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 412), and we will not overturn the Family Part's findings of fact when they

are "supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411-12. A reviewing court will also not disturb the Family Part's factual findings and legal conclusions that flow from them unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017) (quoting Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015)). We review a Family Part's legal determinations de novo. Id. at 565.

Defendant's challenge to the Family Part's order rests on his claim the court erred in interpreting the MSA. We recognize that the settlement of the parties' marital disputes, as reflected in the MSA, "is encouraged and highly valued in our system," Satz v. Satz, 476 N.J. Super. 536, 550 (App. Div. 2023) (quoting Quinn v. Quinn, 225 N.J. 34, 44 (2016)), and "'there is a "strong public policy favoring stability of arrangements in matrimonial actions,"'" ibid. (quoting Quinn, 225 N.J. at 44). However, our interpretation of a marital settlement agreement is "governed by basic contract principles and, as such, [we] should discern and implement the parties' intentions." Ibid.

The parties' MSA "is no less a contract than an agreement to resolve a business dispute." Ibid. (quoting J.B. v. W.B., 215 N.J. 305, 326 (2013)). In

9

our interpretation of the MSA, it is not our role to "rewrite or revise [the] agreement [if] the intent of the parties is clear." Ibid. (quoting Quinn, 225 N.J. at 45). We are required "to 'discern and implement "the common intention of the parties[,]" and "enforce [the mutual agreement] as written."'" Ibid. (alteration in original) (quoting Quinn, 225 N.J. at 46). "To the extent that there is any ambiguity in the expression of the terms of a settlement agreement, a hearing may be necessary to discern the intent of the parties at the time the agreement was entered and to implement that intent." Quinn, 225 N.J. at 45.

Here, as the motion court correctly recognized, paragraph twenty-nine of the MSA plainly and unambiguously states the parties shall share the costs of the children's dental care evenly. The court, however, reasoned that other provisions in the MSA modified paragraph twenty-nine's plainly stated obligations and imposed conditions—such as plaintiff's prior approval and consent—on defendant's entitlement to a contribution from plaintiff for her equal share of the costs of orthodontic care for the children. For example, the court generally referred to paragraphs three and five of the MSA and suggested they—in some undescribed manner—modified what the court otherwise found was paragraph twenty-nine's "wholly dispositive" language requiring an even split of the cost of the children's dental care.

We agree with the court that those paragraphs provide conditions pertinent to one party's entitlement under paragraph twenty-nine to reimbursement for the children's dental expenses from the other party. For example, paragraph three requires that the parties "consult and agree with each other with respect to all major decisions concerning" the medical care and health of the children, and neither party disputes that whether the children should get the orthodontic care at issue constitutes a "major decision" subject to the consult-and-agree requirement.

Similarly, paragraph five requires that the parties "agree on the medical [and] dental . . . providers for the children" except in the case of emergencies. Indeed, during defendant's testimony at the hearing, he admitted he did not obtain plaintiff's consent for either the orthodontic care or for the dental provider as required under the MSA.[3]

---

[3] Plaintiff also argued defendant violated the MSA by using a dental care provider that is not in her dental insurance network as required under paragraph nine, which provides in pertinent part that the parties agree defendant "shall be responsible for the $5,000 deductible for medical and prescription expenses[,]" and the "[p]arties shall use in-network providers except in case of an emergency." It is unclear if paragraph nine applies to dental benefits or whether the costs of orthodontic care fall within the "medical and prescription expenses" referenced. We need not address this provision, or offer any opinion on it, in our determination of defendant's appeal other than to note that on remand the parties shall be permitted to make whatever arguments they deem appropriate

However, neither paragraph twenty-nine's plain language nor the requirements in paragraphs three and five, make clear what is to occur where, as here, the parties cannot agree on the provision of the dental care or the provider. That is, the MSA does not prescribe the manner in which the parties are to resolve what the court correctly recognized was a genuine dispute concerning an issue for which the agreement otherwise requires that the parties agree.

Plaintiff claims, and the court implicitly found, that the parties' inability to reach an agreement on the necessity of the orthodontic care and the selection of the dental provider bars defendant from seeking reimbursement under the MSA for the dental care he claims is a necessity and therefore is in the best interests of the children. Defendant's arguments are founded on the implicit contention that plaintiff unreasonably failed to provide consent to the orthodontic care and the provider and therefore breached an implied covenant in the MSA and became obligated to pay her share of the costs of orthodontic care under paragraph twenty-nine.

---

concerning the application of paragraph nine to defendant's motion to compel plaintiff's contribution to the costs of the orthodontic care provided to the children.

A-0814-22

We cannot resolve the parties' dispute over the nature and extent of plaintiff's obligation, if any, to have consented to the orthodontic care defendant claims was necessary and therefore in the children's best interests, and whether plaintiff violated any contractual obligations under the MSA such that she is obligated to contribute to the dental expenses under paragraph twenty-nine even based on a claim defendant did not comply with the requirements of paragraphs three and five. The record presented on appeal permits only the conclusion that the MSA is ambiguous as to those issues and, as a result, the trial court should have conducted a plenary hearing to determine the parties' obligations under the MSA based on their intentions at the time they entered into the agreement, see Quinn, 225 N.J. at 45, whether either party breached their contractual obligations, and, if there was a breach, what the appropriate remedy should be as it pertains to defendant's motion to compel plaintiff's contribution to the costs of the orthodontic care.

Additionally, the record presented on appeal does not permit a review of the court's determination that defendant's motion should be denied because he had previously obtained a favorable determination of a prior motion made by plaintiff based on an interpretation of the MSA inconsistent with the one on which her relied in support of his current motion to compel plaintiff to contribute

13

to the orthodontic care costs.  The court appears to have applied the doctrine of judicial estoppel, see Adams v. Yang, 475 N.J. Super. 1, 8-9 (App. Div. 2023) (explaining the doctrine of judicial estoppel), but its determination is untethered to any record evidence and is unsupported by the requisite findings of fact and conclusions of law, R. 1:7-4.  Thus, we are unable to determine whether the doctrine of judicial estoppel, which is "not a favored remedy, because of its draconian consequences," Adams, 475 N.J. Super. at 9, was correctly applied by the motion court.

We therefore vacate the court's order denying defendant's motion to compel plaintiff to pay fifty percent of the costs of the children's orthodontic care and remand for the court to reconsider the motion anew.  The court shall conduct a hearing to:  resolve the MSA's ambiguities concerning the nature and scope of plaintiff's obligation, if any, to provide consent to the orthodontic care; determine the effect of any breach of that obligation on the resolution of defendant's motion; and to conduct such other proceedings required to address and decide any other factual and legal issues—including application of the doctrine of judicial estoppel—presented by the parties in support of their respective positions.

We do not preclude the parties from raising any and all issues or arguments pertinent to a determination of defendant's motion, and the court shall conduct such proceedings it deems appropriate to develop the record required to decide the motion. Our decision to vacate the order and remand for further proceedings does not constitute an expression of an opinion on the merits of defendant's motion or plaintiff's opposition. The remand court shall make appropriate findings of fact and conclusions of law supporting its final determination. R. 1:7-4.

Vacated and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-0814-22